John W. Sither
Senior Attorney
Environmental Enforcement Section
Environment and Natural Resources Division
U.S. Department of Justice
P.O. Box 7611
Washington, D.C. 20044
(202) 514-5484
Email: John.Sither@usdoj.gov

Kurt G. Alme
United States Attorney
Mark S. Smith
Assistant United States Attorney
Office of the United States Attorney
District of Montana
2601 Second Avenue North
Billings, Montana 59101
(406) 247-4630
Email: Mark.Smith3@usdoj.gov

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MONTANA

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

UNITED STATES OF AMERICA,

                Plaintiff,

      v.                            Civil No.  _____

BEAVERHEAD COUNTY JACKSON WATER
   AND/OR SEWER DISTRICT,

                Defendant.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

**COMPLAINT**

The United States of America, by authority of the Attorney General of the United States and through the undersigned attorneys, acting at the request of the United States Environmental Protection Agency ("EPA"), files this Complaint and alleges the following:

## NATURE OF ACTION

1.      This is a civil action brought pursuant to Section 1414(b) of the Safe Drinking Water Act ("SDWA"), 42 U.S.C. § 300g-3(b), against Beaverhead County Jackson Water and/or Sewer District ("Defendant") for injunctive relief for violations of the National Primary Drinking Water Regulations ("NPDWRs") in 40 C.F.R. Part 141.

## JURISDICTION AND VENUE

2.      This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1331 and 1345, and 42 U.S.C. § 300g-3(b). Venue properly lies in this District pursuant to 28 U.S.C. § 1391(b) and 42 U.S.C. § 300g-3(b) as the violations alleged occurred within this District.

## DEFENDANTS

3.      Defendant is a Montana unit of local government created pursuant to Title 7, Chapter 13, Part 22, Montana Code Annotated and, therefore, a "person" as defined in Section 1401(12) of the SDWA, 42 U.S.C. § 300f(12), 40 C.F.R.

2

§ 141.2, and Section 17.38.202(4) of the Administrative Rules of Montana ("ARM").

4.    At all times relevant to this Complaint, Defendant has owned and/or operated a public water system as defined in section 1401(4) of the SDWA, 42 U.S.C. § 300f(4), 40 C.F.R. § 141.2, and ARM § 17.38.202(5).

5.    Defendant is subject to Part B of the SDWA, 42 U.S.C. §§ 300g through 300g-9; 40 C.F.R. Part 141; and Title 17, Chapter 28, Subchapter 2 of the ARM.

## STATUTORY AND REGULATORY BACKGROUND

6.    As directed by section 1412 of the SDWA, 42 U.S.C. § 300g-1, EPA has promulgated the NPDWRs, which are codified at 40 C.F.R. Part 141.

7.    The NPDWRs apply to each public water system in each state. 42 U.S.C. § 300g.

8.    Montana has adopted regulations to ensure the safety of public water supplies. *See* ARM Title 17, Chapter 38, Subchapter 2 (the "Montana Drinking Water Regulations").

9.    EPA has approved Montana's program for primary enforcement authority for the public water supply system program, pursuant to section 1413 of the SDWA. 42 U.S.C. § 300g-2; 40 C.F.R. Part 142; *see, e.g.*, 43 Fed. Reg. 8028

3

(Feb. 27, 1978) and 59 Fed. Reg. 65359-65360 (Dec. 19, 1994).

10.    To protect the health of persons who use public water systems, the NPDWRs and the Montana Drinking Water Regulations require owners and operators of public water systems to comply with various maximum contaminant levels ("MCLs") and treatment techniques. The NPDWRs and the Montana Drinking Water Regulations also include sampling, monitoring, public notice, and reporting requirements. The NPDWRs and the Montana Drinking Water Regulations apply to various contaminants, including, but not limited to, arsenic, combined radium, gross alpha, pesticides/herbicides, asbestos, lead, and total coliform.

11.    The NPDWRs are "applicable requirements" as that term is defined in section 1414(i) of the SDWA, 42 U.S.C. § 300g-3(i).

12.    The Montana Drinking Water Regulations are "applicable requirements" as that term is defined in section 1414(i) of the SDWA, 42 U.S.C. § 300g-3(i).

13.    Section 1414(a) of the SDWA, 42 U.S.C. § 300g-3(a), authorizes EPA to issue an administrative order to require compliance with any applicable requirement. Section 1414(b) of the SDWA, 42 U.S.C. § 300g-3(b), authorizes EPA to bring a civil action if necessary to require compliance with any applicable

4

requirement, seeking the court to enter such judgment as protection of public health may require.

14.     The NPDWRs include the following requirements that are relevant to this action.

## Arsenic

15.     EPA has established an MCL for arsenic of 0.010 milligrams per liter ("mg/l"). 40 C.F.R. § 141.62(b)(16).

16.     To determine compliance with the MCL for arsenic, each owner or operator of a community water system is required to monitor for arsenic. The frequency of required monitoring depends on the circumstances. For example, if a system has exceeded the arsenic MCL, it is required to monitor for arsenic quarterly. 40 C.F.R. § 141.23(c)(7) and ARM § 17.38.216(3)(a)(i)(2).

17.     Montana has adopted the EPA's arsenic MCL by reference. ARM § 17.38.203(1)(b).

## Radionuclides

18.     EPA has established MCLs for certain radioactive drinking water contaminants.    40 C.F.R. § 141.66. For combined radium-226 and -228, the MCL is five picocuries per liter ("pCi/l"). 40 C.F.R. § 141.66(b). For gross alpha, the MCL is 15 pCi/l. 40 C.F.R. § 141.66(c).

19.     To determine compliance with the MCLs for combined radium-226 and radium 228 and for gross alpha particles, each owner or operator of a community water system is required to monitor for these contaminants. 40 C.F.R. §§ 141.26(a).

20.     Montana has adopted the EPA combined radium and gross alpha MCLs by reference. ARM § 17.38.206(1).

### Consumer Confidence Reports

21.     Each owner or operator of a community water system must deliver an annual report, known as a Consumer Confidence Report ("CCR"), to its customers. The CCR must include, among other things, information on the source of the system's water, any contaminants detected in the system's water, and any noncompliance with the NPDWRs during the year covered by the report. Each report must be provided by July 1st of the following year. 40 C.F.R. Part 141, Subpart O.

22.     Each owner and operator of a community water system must provide the state with a copy of its CCR at the same time it delivers the CCR to its customers. Within three months of providing the CCR to its customers, the system must certify to the state that the report has been delivered to its customers and that it is correct and consistent with data previously submitted to EPA. 40 C.F.R.

6

§ 141.155(c).

23.    Montana has adopted these CCR requirements by reference. ARM

§ 17.38.239(2).

### Pesticide/Herbicide Contaminants

24.    To determine compliance with the MCLs for pesticide/herbicide

contaminants, also known as organic contaminants, each owner or operator of a

community water system is required to conduct monitoring for these contaminants.

The initial monitoring requirement was quarterly. In some circumstances, the state

may reduce the monitoring frequency to once every three years. 40 C.F.R.

§§ 141.24(h).

25.    Montana has adopted these pesticide/herbicide monitoring

requirements by reference. ARM § 17.38.216(3)(b).

### Lead Sampling Notification

26.    When individual water taps are monitored for lead, all water systems

are required to notify the customers served by those taps. The consumer notice

must (1) be provided no later than 30 days after the system learns of the monitoring

results, (2) include the results of the lead tap water monitoring, an explanation of

the health effects of lead, steps consumers can take to reduce exposure from

drinking water, and contact information for the system, and (3) be provided by

7

mail or another method approved by the state. 40 C.F.R. § 141.85(d).

27.     Montana has adopted these lead sampling notification requirements by reference. ARM § 17.38.239(3).

## Asbestos

28.     Each owner or operator of a community water system is required to monitor its drinking water at least every three years for asbestos. 40 C.F.R. § 141.23(a) and (b).

29.     Montana has adopted this asbestos monitoring requirement by reference. ARM § 17.38.216(3)(a).

## Total Coliform Bacteria

30.     Each community water system serving a population of up to 1,000 and using only ground water is required to monitor at least monthly for total coliform. 40 C.F.R. §§ 141.21(a)(2) and 141.21(h) (applicable prior to April 1, 2016); 40 C.F.R. § 141.855(b) (applicable after March 31, 2016); ARM § 17.38.215.

31.     Coliforms are bacteria that are naturally present in the environment and are used as an indicator that other, potentially harmful bacteria may be present. 40 C.F.R. part 141 subpart O, appendix A; 40 C.F.R. part 141, subpart Q, appendix B.

## **Source Water Sampling**

32.     Upon receiving a positive total coliform microbiological result, each community water system using only ground water is required to conduct triggered source water monitoring within 24 hours. The sampling must include at least one ground water source sample from each ground water source in use at the time the total coliform-positive sample was collected. 40 C.F.R. § 141.402(a)(2).

33.     Montana has adopted these requirements by reference. ARM § 17.38.211(1).

## **Reporting to State**

34.     Each supplier of water is required to report analytical results to the state within the first 10 days following the month in which sample results are received or within the first 10 days of the end of the relevant monitoring period, whichever is earlier. 40 C.F.R. § 141.31(a). This requirement applies, among other things, to sampling results for arsenic, combined radium, gross alpha, pesticides / herbicides, total coliform, and asbestos.

35.     If a supplier of water fails to comply with a monitoring requirement for arsenic, combined radium, gross alpha, pesticides/herbicides, or asbestos, or fails to complete and distribute a CCR to its customers as required by the NPDWRs, it must notify the state within 48 hours of learning of the violation. 40

C.F.R. § 141.31(b).

36.     If a supplier of water fails to comply with a monitoring requirement for total coliform, it must notify the state within 10 days of discovering the violation. 40 C.F.R. §§ 141.21(g)(2), 141.21(h), and 141.861(a)(4).

37.     Montana has adopted the reporting requirements in 40 C.F.R. §§ 141.21 and 141.31 by reference. ARM §§ 17.38.215(2) and 17.38.234(7)(a).

## Public Notice

38.     If a public water system fails to monitor as required by the NPDWRs for any contaminant, the system's owner/operator must notify the public no later than 12 months after the system discovers the monitoring violation. 40 C.F.R. § 141.204; 40 C.F.R. Part 141, Subpart Q, Appendix A; see also 40 C.F.R. § 141.861(a)(4) for current requirements specific to bacteriological contaminants. The system must certify to the state within 10 days that it has provided public notice. 40 C.F.R. § 141.31(d).

39.     Montana has adopted the EPA's public notice requirements in 40 C.F.R. Part 141, Subpart Q by reference. ARM § 17.38.239(1).

## Certified Operator

40.     Each community water system in Montana is required to retain a certified operator to perform monitoring and reporting. ARM § 17.38.249.

## FACTUAL BACKGROUND AND GENERAL ALLEGATIONS

41.     As a person owning and/or operating a public water system,

Defendant is a "supplier of water" as defined in Section 1401(5) of the SDWA, 42

U.S.C. § 300f(5), and 40 C.F.R. § 141.2.

42.     Defendant's public water system (the "System") is located in

Beaverhead County, Montana, in the town of Jackson, Montana.

43.     The System serves approximately 28 year-round residents. In

addition, each day it serves approximately 20 individuals who are not year-round

residents. It serves approximately 24 service connections used by year-round

residents and five other connections.

44.     The System is a "community water system" as defined in section

1401(15) of the SDWA, 42 U.S.C. § 300f(15). Montana adopted this definition by

reference in ARM § 17.38.202.

45.     The System uses ground water as its source. The System's ground

water has not been determined by EPA or the State of Montana Department of

Environmental Quality ("MDEQ") to be "ground water under the direct influence

of surface water" as defined in 40 C.F.R. § 141.2 or ARM § 17.38.202(3).

### MDEQ Enforcement

46.     On May 31, 2005, MDEQ notified Defendant that a recent sample

from the System had been found to contain 0.049 mg/l arsenic, which was above

the arsenic MCL of 0.010 mg/l scheduled to come into effect in 2006.

47.     On January 3, 2008, MDEQ granted Defendant an exemption

extending the compliance date for the arsenic MCL to January 23, 2009. The

exemption directed Defendant to secure a consultant or engineering firm, to

research and develop proposals for options such as designing, funding, and

installing appropriate treatment, upgrading existing treatment, developing and

accessing an alternative water source, increasing rates, making accounting

changes, and operating jointly with another public water system.

48.     MDEQ also directed Defendant to monitor the System's water

quarterly for arsenic, beginning with the first quarter of 2008.

49.     In 2008 and 2009, MDEQ notified Defendant that it had failed to

monitor the System's water for arsenic in the first and second quarters of 2008 and

the first quarter of 2009, in violation of ARM § 17.38.216.

50.     On August 12, 2008, MDEQ notified Defendant that the Defendant

had failed to submit a copy of its CCR for 2007 to MDEQ by July 1, 2008, in

violation of ARM § 17.38.239, and that a sampling result collected on June 8, 2009

had exceeded the arsenic MCL. MDEQ also noted that the MCL exemption

granted previously had expired on January 23, 2009 and that Defendant had not

applied for an extension to the exemption.

51.     On August 14, 2009, MDEQ notified Defendant that the Defendant had failed to submit a copy of its CCR for 2008 to MDEQ by July 1, 2009, in violation of ARM § 17.38.239.

52.     On August 31, 2009, MDEQ referred Defendant's violations of the arsenic MCL and the CCR requirement to EPA for formal enforcement action.

## 2009 Administrative Order

53.     On November 10, 2009, EPA, as authorized by section 1414 of the SDWA, 42 U.S.C. § 300g-3, issued a Notice of Violation (the "NOV") to MDEQ, stating that Defendant had exceeded the arsenic MCL during the second and third quarters of 2009, failed to monitor for arsenic during the first three quarters of 2008 and the first quarter of 2009, failed to monitor for fluoride, failed to submit a CCR for 2007, failed to provide public notice of these violations, and failed to report these violations to MDEQ.

54.     On December 14, 2009, the EPA issued an Administrative Order (the "2009 Order") to Defendant, as authorized by section 1414 of the SDWA. The 2009 Order cited each violation cited in the NOV except the fluoride violation. The 2009 Order directed Defendant

- to monitor quarterly for arsenic;

- to report arsenic monitoring results to EPA within 10 days of the end of each monitoring period;

- to report any violations of the arsenic monitoring requirement to EPA and MDEQ within 48 hours;

- within 60 days of receiving the 2009 Order, to provide EPA with a compliance plan and schedule for coming into compliance with the arsenic MCL, with the schedule to become an enforceable part of the 2009 Order upon approval by EPA;

- to achieve and maintain compliance with the arsenic MCL by the final date in the EPA-approved compliance schedule;

- within 30 days of receiving the Order, prepare and distribute an annual CCR for 2007 and within 90 days of receiving the Order, certify having distributed it to the System's customers;

- to prepare and distribute annual CCRs and provide certifications annually thereafter as required by the NPDWRs; and

- to provide public notice of prior, and any future, violations of the NPDWRs.

55.    On March 15, 2010, EPA notified Defendant that Defendant had violated the 2009 Order by failing to submit a compliance plan and schedule for

14

meeting the arsenic MCL.

56.     On April 8, 2010, Defendant submitted a compliance schedule to EPA with a final compliance deadline of May 31, 2015. The schedule also included various interim deadlines, one of which was to prepare a Preliminary Engineering Report ("PER") and submit a U.S. Department of Agriculture Rural Development grant application by April 30, 2011. EPA approved this schedule on June 24, 2010.

57.     In a letter of January 17, 2012, after discussions with Defendant, EPA revised the 2009 Order to establish interim deadlines of December 31, 2012 for revising the PER if needed to address radionuclides, April 15, 2013 to apply for funding for the final design and preparation of plans and specifications, and December 1, 2013 for applying for construction funding. The letter also stated that Defendant was required to monitor quarterly for combined radium.

58.     On February 21, 2012, MDEQ notified Defendant that because a sample taken on September 19, 2011 contained 27.4 pCi/l of gross alpha, in excess of the MCL of 15 pCi/l, Defendant would be required to monitor quarterly for gross alpha beginning with the first quarter of 2012.

59.     On August 10, 2012, MDEQ asked EPA to address Defendant's radionuclide MDL and monitoring violations in the EPA's ongoing enforcement action.

60.     On February 19, 2013, EPA notified Defendant that Defendant had violated the 2009 Order by failing to monitor for arsenic during the fourth quarter of 2012, failing to monitor for combined radium during the second, third, and fourth quarters of 2012, and failing to report the monitoring failures to MDEQ and EPA within 48 hours.

61.     On April 17, 2013, EPA issued an Amended Compliance Order (the "2013 Amended Order"). The 2013 Amended Order revised the 2009 Order by, among other things, extending the interim deadline for revising the PER to September 15, 2013 and extending the final MCL compliance date to December 1, 2015. The 2013 Amended Order also required Defendant to submit quarterly reports on its progress in meeting the arsenic and combined radium MCLs.

62.     On August 26, 2013, EPA extended Defendant's deadline for submitting a revised PER under the 2009 Order to December 15, 2013. The final compliance date for meeting MCLs remained December 1, 2015.

63.     On February 10, 2014, EPA notified Defendant that Defendant had violated the 2013 Amended Order by failing to provide public notice of Defendant's arsenic MCL violations for all of 2012 and 2013 and combined radium violations for the fourth quarter of 2011 and all of 2012 and 2013.

64.     On September 18, 2014, EPA notified Defendant that Defendant had

violated the 2009 Order and the 2013 Amended Order by failing to prepare and distribute a CCR for 2013 by July 1, 2014.

65.    On March 25, 2015, EPA notified Defendant that Defendant had violated the 2013 Amended Order by failing to monitor for arsenic and combined radium during the third and fourth quarters of 2014 and failing to notify MDEQ and EPA of these monitoring failures.

66.    On October 9, 2015, EPA notified Defendant that Defendant had violated the 2009 Order and the 2013 Amended Order by failing to prepare and distribute a CCR for 2014 by July 1, 2015.

### 2014 Administrative Order

67.    On June 12, 2014, MDEQ referred an additional set of Defendant's violations to EPA for enforcement. The violations included failure to submit a lead consumer notice, failure to monitor for synthetic pesticides/herbicides (for which Montana had placed Defendant on a triennial monitoring schedule), and failure to monitor for asbestos.

68.    On July 28, 2014, EPA issued an NOV to the District, citing failures to submit a lead consumer notice in 2013; to monitor for asbestos during 2011-2013; to monitor for organic contaminants during 2011-2013; and to report these violations to MDEQ.

69.     On September 17, 2014, EPA issued an administrative order (the "2014 Order") to Defendant, citing the violations referenced in above. The 2014 Order directed Defendant:

- within 30 days, to mail a consumer notice to the persons served by each tap for which Defendant monitored for lead in 2013; and

- within 30 days, to monitor the System's water for asbestos.

70.     On March 25, 2015, EPA notified Defendant that Defendant had violated the 2014 Order by failing to monitor for pesticides/herbicides and for asbestos and by failing to provide a lead consumer notice.

## CLAIMS FOR RELIEF

71.     For each Claim for Relief below, Plaintiff incorporates by reference each preceding paragraphs as if fully set forth in that Claim.

72.     As a result of the violations cited in each Claim for Relief, Defendant is subject to injunctive relief. 42 U.S.C. § 300g-3(b).

73.     Unless enjoined by this Court, the violations described in the Claims for Relief will continue.

### First Claim for Relief: Violations of Arsenic MCL

74.     Defendant's water has exceeded the arsenic MCL on numerous occasions from the second quarter of 2009 to the present, in violation of 40 C.F.R.

§ 141.62(b)(16) and ARM § 17.38.203(1)(b).

## Second Claim for Relief: Violations of Combined Radium MCL

75.    Defendant's water has exceeded the combined radium MCL on numerous occasions from the first quarter of 2011 to the present, in violation of 40 C.F.R. § 141.66(b) and ARM § 17.38.206(1).

## Third Claim for Relief: Violations of Gross Alpha MCL

76.    Defendant's water has exceeded the gross alpha MCL from the 3rd quarter of 2015 to the present, in violation of 40 C.F.R. § 141.66(c) and ARM § 17.38.206(1).

## Fourth Claim for Relief: Failures to Monitor for Arsenic

77.    Defendant failed to monitor the System's water for arsenic from the third quarter of 2014 to the present, in violation of 40 C.F.R. § 141.23(c)(7), ARM § 17.38.216(3)(a)(i)(2), and the 2009 Order.

## Fifth Claim for Relief: Failures to Monitor for Combined Radium

78.    Defendant failed to monitor the System's water for combined radium from the third quarter of 2014 to the present, in violation of 40 C.F.R. § 141.26(a), ARM § 17.38.216(3)(d), and the 2009 Order, as amended in 2013.

## Sixth Claim for Relief: Failures to Monitor for Gross Alpha

79.    Defendant failed to monitor the System's water for gross alpha from

the third quarter of 2014 to the present, in violation of 40 C.F.R. § 141.26 and

ARM § 17.38.216(3)(d).

### Seventh Claim for Relief: Failure to Monitor for Pesticides / Herbicides

80.     Defendant failed to monitor the System's water for

pesticides/herbicides during the 2011-2013 triennial period, in violation of 40

C.F.R. § 141.24 and ARM § 17.38.216(3)(b), and during the first 30 days after

receiving the 2014 Order, in violation of that order.

### Eighth Claim for Relief: Failure to Distribute Consumer Confidence Reports

81.     For various years from 2007 to the present, Defendant failed to

distribute Consumer Confidence Reports to its customers and/or to MDEQ by July

1st of the following year, in violation of 40 C.F.R. Part 141, Subpart O, and ARM

§ 17.38.239(2), and in violation of either the 2009 Order or the 2013 Amended

Order.

### Ninth Claim for Relief: Failure to Provide Lead Sampling Notification

82.     In 2013, Defendant failed to notify customers of the System of tap

sampling for lead, in violation of 40 C.F.R. § 141.85(d) and ARM § 17.38.239(3).

### Tenth Claim for Relief: Failure to Monitor for Asbestos

83.     Defendant failed to monitor the System's water for asbestos during

the 2011-2013 triennial period, in violation of 40 C.F.R. 40 C.F.R. § 141.23(a) and

(b) and ARM § 17.38.216(3)(a), and within 30 days of receiving the 2014 Order, in violation of that order.

## Eleventh Claim for Relief: Failure to Monitor for Bacteriological Contaminants

84.    Defendant failed to monitor the System's water for bacteriological contaminants in May of 2012, in violation of 40 C.F.R. § 141.21(a)(2) and ARM § 17.38.215.

## Twelfth Claim for Relief: Failure to Conduct Source Water Sampling

85.    In June of 2012, after a sample of the System's water had been found positive for total coliform, Defendant failed to collect *E.coli* samples from all wells within 24 hours, in violation of 40 C.F.R. § 141.402(a)(2) and ARM § 17.38.211(1).

## Thirteenth Claim for Relief: Failure to Provide Public Notice

86.    Defendant failed to provide timely public notice for the failures to monitor for arsenic on various occasions from the first quarter of 2008 to the present, in violation of 40 C.F.R. § 141.204 and ARM § 17.38.239(1).

## Fourteenth Claim for Relief: Late Reporting

87.    On various occasions from the second quarter of 2010 to the present, Defendant failed to submit results of monitoring for arsenic and combined radium

within 10 days of the end of the required monitoring period, in violation of

40 C.F.R. § 141.31(a), and in violation of either the 2009 Order or the 2013

Amended Order.

### Fifteenth Claim for Relief: Failures to Report Violations

88.    Defendant failed to report numerous NPDWR and ARM violations to

MDEQ and EPA, including, but not limited to, the failures to monitor for arsenic

and combined radium during the third and fourth quarters of 2014, the failure to

monitor for asbestos in 2011-2013, and the failure to monitor for

pesticides/herbicides in 2011-2013, and the failures to provide CCRs by July 1st of

2008, 2009, 2011, 2014, and 2015 for each of the preceding years.

### Sixteenth Claim for Relief: Failure to Engage Certified Operator

89.    Defendant failed to engage the services of a certified operator for the

System for the third and fourth quarters of 2014 and the first quarter of 2015, in

violation of ARM § 17.38.249.

### REQUEST FOR RELIEF

WHEREFORE, Plaintiff United States of America, respectfully prays that

this Court enter judgment in favor of the United States and against Defendant:

a.    Enjoining Defendant from ongoing and future violations of the

National Primary Drinking Water Regulations, the Montana Drinking Water

Regulations, the Safe Drinking Water Act, and any administrative order issued by

EPA; and

      b.      Awarding the United States any and all further relief that this Court

deems just and proper.


                         Respectfully Submitted,


                         /s/ John Sither
                         JOHN SITHER
                         Senior Attorney
                         Environmental Enforcement Section
                         Environment and Natural Resources
                         Division
                         U.S. Department of Justice
                         P.O. Box 7611
                         Washington, D.C. 20044-7611
                         John.Sither@usdoj.gov


                         /s/ Kurt G. Alme
                          KURT G. ALME
                         United States Attorney
                         MARK S. SMITH
                         Assistant United States Attorney
                         Office of the United States Attorney
                         District of Montana
                         2601 Second Avenue North
                         Billings, Montana 59101
                         (406) 247-4630
                         Mark.Smith3@usdoj.gov

OF COUNSEL:

MARGARET J. (PEGGY) LIVINGSTON
Senior Enforcement Attorney
United States Environmental Protection Agency
1595 Wynkoop Street
Denver, CO    80202
(303) 312-6858 (telephone)
(303) 312-7202 (fax)
livingston.peggy@epa.gov