John W. Sither
Senior Attorney
Environmental Enforcement Section
Environment and Natural Resources Division
U.S. Department of Justice
P.O. Box 7611
Washington, D.C. 20044
(202) 514-5484
Email: John.Sither@usdoj.gov

Kurt G. Alme
United States Attorney
Mark S. Smith
Assistant United States Attorney
Office of the United States Attorney
District of Montana
2601 Second Avenue North
Billings, Montana 59101
(406) 247-4630
Email: Mark.Smith3@usdoj.gov

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

UNITED STATES OF AMERICA,

                Plaintiff,

      v.

                                Civil No.   2:18-cv-00023-BMM

BEAVERHEAD COUNTY JACKSON WATER
  AND/OR SEWER DISTRICT,

                Defendant.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

**CONSENT DECREE**

# TABLE OF CONTENTS

I.     JURISDICTION AND VENUE............................................................................ 1

II.    APPLICABILITY ............................................................................................ 2

III.   OBJECTIVE .................................................................................................... 3

IV.   DEFINITIONS ................................................................................................ 3

V.     COMPLIANCE REQUIREMENTS ................................................................ 5

VI.   STIPULATED PENALTIES ........................................................................... 9

VII.   RIGHT OF ENTRY ...................................................................................... 11

VIII. FORCE MAJEURE ....................................................................................... 12

IX.   DISPUTE RESOLUTION .............................................................................. 13

X.     EFFECT OF SETTLEMENT/RESERVATION OF RIGHTS ......................... 14

XI.   NOTICES ....................................................................................................... 15

XII.   EFFECTIVE DATE ....................................................................................... 16

XIII. RETENTION OF JURISDICTION ................................................................ 17

XIV. MODIFICATION ........................................................................................... 17

XV.   TERMINATION ............................................................................................ 17

XVI. PUBLIC PARTICIPATION ............................................................................ 17

XVII. SIGNATORIES/SERVICE ............................................................................. 18

XVIII. INTEGRATION ............................................................................................. 18

XIX. FINAL JUDGMENT ...................................................................................... 19

WHEREAS, Plaintiff United States of America, on behalf of the United States Environmental Protection Agency ("EPA"), has filed a complaint in this action concurrently with this Consent Decree, alleging that Defendant, Beaverhead County Jackson Water and/or Sewer District ("Defendant"), violated certain National Primary Drinking Water Regulations ("NPDWRs") promulgated pursuant to Section 1412 of the Safe Drinking Water Act ("SDWA" or the "Act"), 42 U.S.C. § 300g-1, and two administrative compliance orders issued by EPA pursuant to Section 1414 of the Act, 42 U.S.C. § 300g-3;

WHEREAS, Defendant owns and/or operates a public water supply system that serves a resident population of approximately 28 individuals, a school population of approximately five individuals, and a resort population of approximately 15 individuals;

WHEREAS, Defendant has very limited financial resources;

WHEREAS, Defendant does not admit any liability to the United States arising out of the transactions or occurrences alleged in the Complaint; and

WHEREAS, the Parties recognize, and the Court by entering this Consent Decree finds, that this Consent Decree has been negotiated by the Parties in good faith and will avoid litigation between the Parties and that this Consent Decree is fair, reasonable, and in the public interest.

THEREFORE, IT IS ADJUDGED, ORDERED, AND DECREED as follows:

## I. JURISDICTION AND VENUE

1. This Court has jurisdiction over the subject matter of this action, pursuant to 28 U.S.C. §§ 1331, 1345, and 1355, and Section 1414 of the Act, 42 U.S.C. § 300g-3, and over the Parties. Venue lies in this District for purposes of this Decree, or any action to enforce this Decree, pursuant to 28 U.S.C. §§ 1391(b)(2) and 1395(a) because the events or omissions giving rise to the claims alleged in the Complaint occurred in this district. Defendant consents to the Court's jurisdiction over this Decree and to venue in this judicial district.

2. For purposes of this Consent Decree, Defendant agrees that the Complaint states claims upon which relief may be granted pursuant to Section 1414(b) of the Act, 42 U.S.C. § 300g-3(b).

## II.    APPLICABILITY

3.      Defendant owns and/or operates a public water supply system (the "System") in Beaverhead County, Montana, which provides water through pipes or other constructed conveyances to the public for human consumption. The System is subject to the NPDWRs.

4.      The obligations of this Consent Decree apply to and are binding upon Defendant, its successors, transferees, or assigns, and any employee or agent acting on behalf of Defendant or its successors, transferees, or assigns, and on the United States.

5.      No transfer of ownership or operation of the System, whether in compliance with the procedures of this Paragraph or otherwise, shall relieve Defendant of its obligation to ensure that the terms of the Decree are implemented, unless (a) the transferee is a county or other government agency authorized to operate a water system under Montana law that agrees to undertake the obligations of this Decree; and (b) EPA consents to the transferee's undertaking of defendant's Consent Decree obligations. At least 30 Days prior to any such transfer, Defendant shall provide a copy of this Consent Decree to the proposed transferee and shall simultaneously provide written notice of the prospective transfer, together with a copy of the proposed written agreement, to EPA Region 8, and the United States Department of Justice, in accordance with Section XI (Notices). Any attempt to transfer ownership or operation of the System without complying with this Paragraph constitutes a violation of this Decree.

6.      Defendant shall provide a copy of this Consent Decree to all officers, employees, and agents whose duties might reasonably include compliance with any provision of this Decree, as well as to any contractor or sub-contractor retained to perform work required under this Consent Decree. Defendant shall condition any relevant contract upon performance of the work in conformity with the terms of this Consent Decree.

7.      In any action to enforce this Consent Decree, Defendant shall not raise as a defense the failure by any of its officers, directors, employees, agents, contractors, or sub-contractors to take any actions necessary to comply with the provisions of this Consent Decree.

### III.    OBJECTIVE

8.     It is the express goal of the Parties that the System achieve and maintain continual, long-term compliance with the NPDWRs and Montana's drinking water regulations in order to protect public health in the town of Jackson, Montana.  All obligations under this Consent Decree shall be interpreted in a manner consistent with this goal.

### IV.    DEFINITIONS

9.     Terms used in this Consent Decree that are defined in the Act or in the NPDWRs shall have the meanings assigned to them in the Act or such regulations, unless otherwise provided in this Decree.  Whenever the terms set forth below are used in this Consent Decree, the following definitions shall apply:

"Act" shall mean the Public Health Service Act (also known as the "Safe Drinking Water Act" or "SDWA"), 42 U.S.C. §§ 300f through 300j-26;

"Application" shall have the definition in Paragraph 16;

"Complaint" shall mean the complaint filed by the United States in this action;

"Compliance Date" shall be December 31, 2018;

"Consent Decree" or "Decree" shall mean this Decree;

"Day" shall mean a calendar day unless expressly stated to be a business day.  In computing any period of time under this Consent Decree, where the last day would fall on a Saturday, Sunday, or federal holiday, the period shall run until the close of business of the next business day;

"Defendant" shall mean Beaverhead County Jackson Water and/or Sewer District, a unit of local government created pursuant to Title 7, Chapter 13, Part 22 of the Montana Code;

"EPA" shall mean the United States Environmental Protection Agency and any of its successor departments or agencies;

"Effective Date" shall mean the date upon which this Consent Decree is entered by the Court or a motion to enter the Consent Decree is granted, whichever occurs first, consistent with Section XII (Effective Date);

"Force Majeure" shall have the definition in section VIII;

"MCLs" shall mean Maximum Contaminant Levels as specified in the NPDWRs;

"MDEQ" shall mean the Montana Department of Environmental Quality;

"mg/l" shall mean milligrams per liter;

"NPDWRs" shall mean the National Primary Drinking Water Regulations, 40 C.F.R. Part 141;

"Paragraph" shall mean a portion of this Decree identified by an Arabic numeral;

"Parties" shall mean the United States and Defendant;

"pc/l" shall mean picocuries per liter;

"RD" shall have the definition in Paragraph 16;

"Section" shall mean a portion of this Decree identified by a roman numeral;

"State" shall mean the State of Montana;

"System" shall mean the public water system operated by Defendant in the town of Jackson, Beaverhead County, Montana;

"TSEP" shall have the definition in Paragraph 16; and

"United States" shall mean the United States of America, acting on behalf of EPA.

# V. COMPLIANCE REQUIREMENTS

10.     <u>Compliance Date for Arsenic, Combined Radium, and Gross Alpha MCLs</u>.  Beginning on the Compliance Date and at all times thereafter, Defendant shall operate the System in a manner that avoids exceedances of the following MCLs:

     a.     Arsenic (MCL of 0.010 mg/l; see 40 C.F.R. § 141.62(b)(16));

     b.     Combined Radium-226 and -228 (MCL of five pc/l; see 40 C.F.R. § 141.66(b)); and

     c.     Gross Alpha (MCL of 15 pc/l; see 40 C.F.R. § 141.66(c).

11.     <u>Compliance Date for Other MCLs</u>.  Beginning on the Effective Date and at all times thereafter, Defendant shall operate the System in a manner that avoids exceedances of all MCLs other than those listed in Paragraph 10, above.

12.     <u>Monitoring</u>.  Beginning on the Effective Date and at all times thereafter, Defendant shall perform all monitoring required by the NPDWRs.  For the parameters listed below, Defendant shall monitor at least as often as specified below, with any less frequent or delayed monitoring that the applicable NPDWR would otherwise permit not to be allowed under this Consent Decree absent written permission by EPA and MDEQ:

     a.     Monitoring quarterly for Arsenic, Combined Radium-226 and -228, and Gross Alpha, as required by 40 C.F.R. §§ 141.23(c)(7) and 141.26(a)(3)(v).

     b.     Monitoring monthly for Total Coliform, as required by 40 C.F.R. § 141.855, and collect *E. coli* samples from all wells within 24 hours of any positive Total Coliform sample, as required by 40 C.F.R. § 141.402(a)(2).

     c.     Monitoring triennially for Asbestos and for Pesticides / Herbicides / Synthetic Organic Compounds, as required by 40 C.F.R. §§ 141.23 and 141.24(h).

13. <u>Reporting</u>.

    a.    For any monitoring result that reveals an exceedance of any MCL, Defendant shall report the result to EPA within 48 hours and to MDEQ as required by Montana law.

    b.    For any monitoring result that does not reveal an exceedance of an MCL, Defendant shall report the result to EPA within 10 days of the end of the relevant monitoring period and to MDEQ as required by Montana law.

14. <u>Public Notification Requirements</u>.

    a.    Defendant shall notify the public of NPDWR violations as required by 40 C.F.R. §§ 141.201-141.211.  Unless an earlier public notice is required by 40 C.F.R. § 141.202, Defendant shall provide public notice of any violation of an MCL or monitoring requirement within 30 days of the discovery of the violation, and shall further provide a copy of the public notice to EPA and MDEQ electronically within 10 days thereafter or as a paper copy within 14 days thereafter.  For MCL violations, Defendant must repeat public notice at least once every 90 days as long as the violation continues.

    b.    Defendant shall distribute annual Consumer Confidence Reports to System customers by July 1st of each year.  No later than three months thereafter, Defendant shall provide a written certification to EPA and MDEQ of having provided this report, as required by 40 C.F.R. part 141, subpart O.

    c.    Defendant shall distribute a lead notification to System customers within 30 days of learning of any lead drinking water result, as required by 40 C.F.R. § 141.85(d), and shall within 30 days after such notification provide a certification to EPA and MDEQ of having distributed it.

15. <u>Certified Operator</u>.  Defendant shall use the services of a certified operator to perform monitoring and reporting on public water supplies, consistent with section 17.38.249 of the Administrative Rules of Montana.

16. <u>System Upgrades and Other Requirements</u>.

    a. Defendant has provided EPA with a copy of the Uniform Application for Montana Public Facility Projects Defendant submitted to the Treasure State Endowment Program ("TSEP") and the United States Department of Housing and Urban Development Community Development Block Grant ("CDBG") on or about May 4, 2016 (the "Application"). The Application is for funds to upgrade the System in order to assure compliance with the MCLs for Arsenic, Combined Radium, and Gross Alpha. The Application states that the System's preferred alternative includes drilling three new water supply wells to replace the System's current source; constructing a new well house, complete with pumps, pressure tanks, and controls; and installing curb stops. The Application requests a total of $588,000 for the upgrade, consisting of a $294,000 grant from TSEP and a $294,000 grant from CDBG. As of January of 2018, Defendant had secured the $588,000 in grants for constructing system upgrades.

    b. Defendant shall meet each deadline in the following schedule:

| Action | Deadline |
|---|---|
| Complete construction of new wells | October 31, 2018 |
| Test each well for water quality (twice) | 1st test: between October 31 and December 31, 2018<br><br>and<br><br>2nd test: between January 1 and June 30, 2019 |
| Complete entire project (wells, pumps, controls, curb stops, and wells) and put project into use. | December 31, 2018 |

    c. If (1) any of Defendant's funding applications are denied, or (2) Defendant is awarded an amount substantially less than, or with a

substantially different allocation between loans and grants than, any amount stated in Subparagraph 16.a, above, or (3) Defendant learns that denial of funding is a reasonably foreseeable possibility, or (4) the Defendant is required to go through an additional bidding and procurement phase, then Defendant shall within 14 days notify EPA in writing of this development and advise EPA of the District's efforts in seeking other possible funding sources. *None of the events in this Paragraph 16.c, and no other delay or reduction in funding, shall defer the Compliance Date or any other deadline or obligation in this Consent Decree without a modification of this Consent Decree pursuant to Section XIV, below.*

d.  Within 30 days after the Effective Date or by the first regularly scheduled District board meeting after the Effective Date, whichever is earlier, Defendant shall designate an individual to serve as its Compliance Officer. That individual shall be responsible for coordinating Defendant's communications with funding agencies, engineers, and construction contractors regarding implementation of the requirements of this Consent Decree.

e.  Within 90 days after the Effective Date, Defendant shall provide EPA with a written report summarizing its collection rates and any terminations of service for nonpayment from the prior 12 months.

f.  Quarterly reports: In addition to all other applicable federal and state reporting and record keeping requirements, Defendant shall submit quarterly progress reports to EPA regarding Defendant's progress implementing the requirements of this Consent Decree. Each report shall cover a calendar quarter (January through March, April through June, July through September, and October through December) and be due on or before the 10th day of the month following the end of the relevant quarter. Each report shall (i) describe Defendant's progress with meeting the deadlines in Paragraph 16, (ii) include monitoring results for Arsenic, Combined Radium, Gross Alpha, if not previously reported to EPA, (iii) describe any maintenance that has been performed and that needs to be performed, (iv) include notes from any public

meetings, and (v) include copies of public notices provided by Defendant, if not already provided to EPA. The reports are required until the Consent Decree is terminated but may, upon written approval by the EPA, be changed to bi-annual submissions. Each quarterly report shall be signed and certified by at least one of Defendant's directors or officers.

## VI.    STIPULATED PENALTIES

17.    Defendant shall be liable for stipulated penalties in the amounts set forth below to the United States for failure to comply with the following requirements of this Consent Decree. The amounts have been agreed upon in this particular instance due to Defendant's limited financial resources, the relatively low revenues expected from the small population served by Defendant, and the costs of Defendant's past and current efforts to achieve compliance.

| Violation | Stipulated Penalty |
|---|---|
| **Exceedances of MCLs** (Paragraphs 10 and 11) | $50 per MCL exceedance |
| **Failure to monitor** (Paragraph 12) | $25 per monitoring failure |
| **Failure to report** (Paragraph 0) | $10 per week |
| **Failure to fulfill public notification requirements and inform EPA/MDEQ** (Paragraph 14) | $50 per week |
| **Failure to use services of a certified operator** (Paragraph 15) | $25 per day of using operator not certified to perform monitoring of public water supplies |
| **Failure to notify EPA of denial of funds, award of substantially less than requested, information indicating denial is a** | $15 per day |

| | |
|---|---|
| **reasonable possibility, or requirement for additional bidding and procurement phase** (Paragraph 16) | |
| **Late construction of wells** (Paragraph 16) | $200 per month |
| **Failure to test any well** (Paragraph 16) | $25 per day of failure |
| **Failure to meet final construction deadline for all project components** (Paragraph 16) | $200 per month |
| **Failure to designate Compliance Officer** (Paragraph 16) | $200 per month |
| **Failure to submit a quarterly report** (Paragraph 16) | $200 per month |
| **Late payment of stipulated penalty** (Paragraph 18) | $100 per week |

18.     All stipulated penalties shall begin to accrue on the first day that performance is delinquent or a violation of this Consent Decree occurs and shall continue to accrue through the final day of correction of the violation. For violations continuing less than a week or month, as applicable, "per week" or "per month" stipulated penalties shall be pro-rated by day.

19.     Stipulated penalties shall become owing upon written demand by EPA and are due on or before the last day of the month following the month the written demand is received.  Defendant shall pay stipulated penalties in accordance with instructions contained in the written demand by EPA.

20.     If Defendant fails to pay stipulated penalties according to the terms of this Consent Decree, the United States shall be entitled to collect interest on such penalties, as provided for in 28 U.S.C. § 1961.

21.     The United States may, in the unreviewable exercise of its discretion, reduce or waive stipulated penalties otherwise due under this Consent Decree.

22.     Defendant shall be liable for stipulated penalties to the United States unless excused under Section VIII (Force Majeure).

23.     Stipulated penalties shall not continue to accrue during any dispute resolution and need not be paid until the following:

    a.     If the dispute is resolved by agreement or by a decision of EPA that is not appealed to this Court, Defendant shall pay accrued penalties determined to be owing, together with interest, to the United States within 30 days of the effective date of the agreement or the receipt of EPA's decision or order;

    b.     If the dispute is appealed to this Court and the United States prevails in whole or in part, Defendant shall pay all accrued penalties determined to be reasonable by this Court within 60 days of receiving this Court's decision or order, except as provided in Subparagraph c, below;

    c.     If any Party appeals this Court's decision, and the United States prevails in the appeal, Defendant shall pay all accrued penalties determined to be owing, together with interest, within 30 days of receiving the final appellate court decision.

24.     Nothing in this Section shall be construed to limit the United States' ability to seek any remedy, including injunctive relief, civil penalties, and/or criminal penalties otherwise provided by law for any violation of this Consent Decree or future violation of the Act, the NPDWRs, or any administrative order issued by EPA pursuant to the Act.

## VII.    RIGHT OF ENTRY

25.     EPA and its contractors, sub-contractors, consultants, agents and attorneys shall have the authority until this Consent Decree is terminated to enter the System or any other property owned by Defendant at all times for the purpose of monitoring the progress of activities required under this Consent Decree, including but not limited to:

    a.     verifying any data or information submitted to the United States in accordance with the terms of this Consent Decree;

      b.    obtaining samples and, upon request, splits of any samples taken by Defendant or its representatives, contractors, sub-contractors, or consultants;

      c.    obtaining documentary evidence, including photographs and similar data; and

      d.    assessing Defendant's compliance with this Consent Decree.

26.    Upon request, EPA shall provide Defendant splits of any samples taken by EPA.

27.    This Consent Decree in no way limits or otherwise affects any right of entry held by EPA pursuant to applicable federal, state, or local laws or regulations.

## VIII.   FORCE MAJEURE

28.    "Force majeure," for purposes of this Consent Decree, is defined as any event arising from causes beyond the control of Defendant, of any entity controlled by Defendant, or of Defendant's contractors that delays or prevents the performance of any obligation under this Consent Decree despite Defendant's best efforts to fulfill the obligation. The requirement that Defendant exercise "best efforts to fulfill the obligation" includes using best efforts to anticipate any potential force majeure event and best efforts to address the effects of any potential force majeure event (a) as it is occurring and (b) following the potential force majeure, such that the delay and any adverse effects of the delay are minimized. "Force Majeure" does not include Defendant's financial inability to perform any obligation under this Consent Decree.

29.    If any event occurs or has occurred that may delay the performance of any obligation under this Consent Decree, whether or not caused by a force majeure event, Defendant shall provide notice orally or by electronic or facsimile transmission to at least one EPA representative identified in Section XI (Notices), within seven days of when Defendant first learned that the event might cause a delay. Within 14 days thereafter, Defendant shall provide in writing to EPA an explanation and description of the reasons for the delay; the anticipated duration of the delay; all actions taken or to be taken to prevent or minimize the delay; a schedule for implementation of any measures to be taken to prevent or mitigate the delay or the effect of the delay; Defendant's rationale for attributing such delay to a force majeure event if it intends to assert such a claim; and a statement as to whether, in the opinion

of Defendant, such event may cause or contribute to an endangerment to public health, welfare or the environment. Defendant shall include with any notice all available documentation supporting the claim that the delay was attributable to a force majeure. Failure to comply with the above requirements shall preclude Defendant from asserting any claim of force majeure for that event for the period of time of such failure to comply, and for any additional delay caused by such failure. Defendant shall be deemed to know of any circumstance of which Defendant, any entity controlled by Defendant, or Defendant's contractors knew or should have known.

30.     If EPA agrees that the delay or anticipated delay is attributable to a force majeure event, the time for performance of the obligations under this Consent Decree that are affected by the force majeure event will be extended by EPA for such time as is necessary to complete those obligations. An extension of the time for performance of the obligations affected by the force majeure event shall not, of itself, extend the time for performance of any other obligation. EPA will notify Defendant in writing of the length of the extension, if any, for performance of the obligations affected by the force majeure event.

31.     If EPA does not agree that the delay or anticipated delay has been or will be caused by a force majeure event, EPA will notify Defendant in writing of its decision.

32.     Defendant's failure to comply with the force majeure notice requirements provided in this Section will be deemed an automatic forfeiture of its right to assert that any prevention or delay of performance was caused by a force majeure.

## IX.     DISPUTE RESOLUTION

33.     If Defendant disputes any determination made by EPA under this Consent Decree related to (a) stipulated penalties, (b) injunctive relief, (c) force majeure, or (d) the termination of the Consent Decree, it shall send written notice within 30 days of such determination to EPA outlining the nature of the dispute and requesting informal negotiations to resolve the dispute. Such period of informal negotiations shall not extend beyond 30 working days from the date when the notice was sent unless the parties agree otherwise.

34.     If the informal negotiations are unsuccessful, the determination of EPA shall control, unless Defendant files a motion with this Court for dispute resolution.

Any such motion must be filed within 30 days after receipt by Defendant of a notice in writing terminating informal negotiations, and such motion must be concurrently sent to DOJ and EPA in accordance with Section XI (Notices) of this Consent Decree. The United States shall then have 30 days to respond to Defendant's motion.

35.     The invocation of formal dispute resolution procedures under this Section shall not extend, postpone or affect in any way any obligation of Defendant under this Consent Decree, unless the parties to the dispute so agree or the Court so orders.

## X.     EFFECT OF SETTLEMENT/RESERVATION OF RIGHTS

36.     This Consent Decree resolves the civil claims of the United States for the violations alleged in the Complaint filed in this action through the Effective Date.

37.     The United States reserves all legal and equitable remedies available to enforce the provisions of this Consent Decree, except as expressly stated in Paragraph 36. This Consent Decree shall not be construed to limit the rights of the United States to obtain penalties or injunctive relief under the Act or implementing regulations, or under other federal laws, regulations, or permit conditions, except as expressly specified in Paragraph 36. The United States further reserves all legal and equitable remedies to address any imminent and substantial endangerment to the public health or welfare or the environment arising at, or posed by, the System, whether related to the violations addressed in this Consent Decree or otherwise.

38.     This Consent Decree is not a permit, or a modification of any permit, under any federal, State, or local laws or regulations. Defendant is responsible for achieving and maintaining complete compliance with all applicable federal, State, and local laws, regulations, and permits; and Defendant's compliance with this Consent Decree shall be no defense to any action commenced pursuant to any such laws, regulations, or permits, except as set forth herein. The United States does not by its consent to the entry of this Consent Decree, warrant or aver in any manner that Defendant's compliance with any aspect of this Consent Decree will result in compliance with provisions of the Act or with any other provisions of federal, State, or local laws, regulations, or permits.

39.     This Consent Decree does not limit or affect the rights of Defendant or of the United States against any third parties, not party to this Consent Decree, nor

does it limit the rights of third parties, not party to this Consent Decree, against Defendant, except as otherwise provided by law.

40.     This Consent Decree shall not be construed to create rights in, or grant any cause of action to, any third party not party to this Consent Decree.

## XI.     NOTICES

41.     Unless otherwise specified in this Decree, whenever notifications, submissions, or communications are required by this Consent Decree, they shall be made in writing and addressed as follows:

As to the United States by email: eescdcopy.enrd@usdoj.gov
                                  Re: DJ # 90-5-1-1-11445


As to the United States by mail:  EES Case Management Unit
                                  Environment and Natural Resources Division
                                  U.S. Department of Justice
                                  P.O. Box 7611
                                  Washington, D.C. 20044-7611
                                  Re: DJ # 90-5-1-1-11445

As to EPA:                        Jill Minter, 8ENF-W-SDW
                                  Environmental Protection Specialist
                                  Office of Enforcement, Compliance, and
                                       Environmental Justice
                                  United States Environmental Protection
                                  Agency
                                  1595 Wynkoop Street
                                  Denver, CO 80202
                                  Telephone: (303) 312-6084
                                  Facsimile: (303) 312-7518


                                  and

Margaret J. (Peggy) Livingston, 8ENF-L
Senior Enforcement Attorney
Office of Enforcement, Compliance, and
Environmental Justice
United States Environmental Protection
Agency
1595 Wynkoop Street
Denver, CO 80202
Telephone: (303) 312-6858
Facsimile: (303) 312-7202

As to Defendant:

Robert G. Nelson, President
Beaverhead County Jackson Water and/or
Sewer District
P.O. Box 792
Jackson, MT 59736
(406) 834-3130

Jeanette Robertson, Secretary
Beaverhead County Jackson Water and/or
Sewer District
P.O. Box 792
Jackson, MT 59736
(406) 925-9816

42.    Any Party may, by written notice to the other Parties, change its designated notice recipient or notice address provided above.

43.    Notices submitted pursuant to this Section shall be deemed submitted upon mailing, unless otherwise provided in this Consent Decree or by mutual agreement of the Parties in writing.

## XII.    EFFECTIVE DATE

44.    The Effective Date of this Consent Decree shall be the date upon which this Consent Decree is entered by the Court or a motion to enter the Consent Decree is granted, whichever occurs first, as recorded on the Court's docket.

## XIII.   RETENTION OF JURISDICTION

45.     The Court shall retain jurisdiction over this case until termination of this Consent Decree, for the purpose of resolving disputes arising under this Decree or entering orders modifying this Decree, pursuant to Sections IX and XIV, or effectuating or enforcing compliance with the terms of this Decree.

## XIV.   MODIFICATION

46.     The terms of this Consent Decree may be modified only by a subsequent written agreement signed by all the Parties.  Where the modification constitutes a material change to this Decree, it shall be effective only upon approval by the Court. Modification of the Compliance Date or any other deadlines in this Consent Decree shall not be considered a material change.

## XV.   TERMINATION

47.     After Defendant has completed the requirements of Section V (Compliance Requirements), and has complied with all other requirements of this Consent Decree, including payment of any accrued stipulated penalties as required by this Consent Decree, for a period of eighteen (18) months, Defendant may serve upon the United States a Request for Termination, stating that Defendant has satisfied those requirements, together with all necessary supporting documentation.

48.     Following receipt by the United States of Defendant's Request for Termination, the Parties shall confer informally concerning the Request and any disagreement that the Parties may have as to whether Defendant has satisfactorily complied with the requirements for termination of this Consent Decree.  If the United States agrees that the Decree may be terminated, the Parties shall submit, for the Court's approval, a joint stipulation terminating the Decree.

49.     If the United States does not agree that the Decree may be terminated, Defendant may invoke Dispute Resolution under Section IX.  However, Defendant shall not seek Dispute Resolution of any dispute regarding termination until after service of its Request for Termination.

## XVI.   PUBLIC PARTICIPATION

50.     This Consent Decree shall be lodged with the Court for a period of not less than 30 Days for public notice and comment in accordance with 28 C.F.R. § 50.7.

The United States reserves the right to withdraw or withhold its consent if the comments regarding the Consent Decree disclose facts or considerations indicating that the Consent Decree is inappropriate, improper, or inadequate. Defendant consents to entry of this Consent Decree without further notice and agrees not to withdraw from or oppose entry of this Consent Decree by the Court or to challenge any provision of the Decree, unless the United States has notified Defendant in writing that it no longer supports entry of the Decree.

## XVII. SIGNATORIES/SERVICE

51.     Each undersigned representative of Defendant and the Assistant Attorney General for the Environment and Natural Resources Division of the Department of Justice certifies that he or she is fully authorized to enter into the terms and conditions of this Consent Decree and to execute and legally bind the Party he or she represents to this document.

52.     This Consent Decree may be signed in counterparts, and its validity shall not be challenged on that basis. Defendant agrees to accept service of process by mail with respect to all matters arising under or relating to this Consent Decree and to waive the formal service requirements set forth in Rules 4 and 5 of the Federal Rules of Civil Procedure and any applicable Local Rules of this Court including, but not limited to, service of a summons.

## XVIII. INTEGRATION

53.     This Consent Decree constitutes the final, complete, and exclusive agreement and understanding among the Parties with respect to the settlement embodied in the Decree and supersedes all prior agreements and understandings, whether oral or written, concerning the settlement embodied herein. No other document, nor any representation, inducement, agreement, understanding, or promise, constitutes any part of this Decree or the settlement it represents, nor shall it be used in construing the terms of this Decree.

## XIX.  FINAL JUDGMENT

54.    Upon approval and entry of this Consent Decree by the Court, this Consent Decree shall constitute a final judgment of the Court as to the United States and Defendant.

Dated and entered this 15 day of ___May_____, 2018.

_____
UNITED STATES DISTRICT JUDGE

FOR THE UNITED STATES OF AMERICA:


3/28/18                                 /s/ Nathaniel Douglas

Date                                       Nathaniel Douglas
Deputy Section Chief
Environmental Enforcement Section
Environment and Natural Resources
Division
U.S. Department of Justice
Washington, D.C. 20530


3/28/18                                   /s/ John Sither

Date                                       John Sither
Senior Attorney
Environmental Enforcement Section
Environment and Natural Resources
Division
U.S. Department of Justice
P.O. Box 7611
Washington, D.C. 20044-7611
John.Sither@usdoj.gov


3/28/18                                   /s/ Kurt G. Alme

Date                                       Kurt G. Alme
United States Attorney
Mark S. Smith
Assistant United States Attorney
Office of the United States Attorney
District of Montana
2601 Second Avenue North
Billings, Montana 59101
(406) 247-4630
Mark.Smith3@usdoj.gov

FOR THE U.S. ENVIRONMENTAL PROTECTION
AGENCY:


3/27/18_____        /s/ Suzanne J. Bohan_____
Date                   Suzanne J. Bohan
                       Assistant Regional Administrator
                       Office of Enforcement, Compliance and
                         Environmental Justice
                       U.S. Environmental Protection Agency, Region 8
                       1595 Wynkoop St.
                       Denver, Colorado 80202


3/27/18_____        /s/ Margaret J. Livingston_____
Date                   Margaret J. (Peggy) Livingston
                       Senior Enforcement Attorney
                       Office of Enforcement, Compliance and
                         Environmental Justice
                       U.S. Environmental Protection Agency, Region 8
                       1595 Wynkoop St.
                       Denver, Colorado 80202

FOR BEAVERHEAD COUNTY JACKSON SEWER AND/OR WATER DISTRICT:


2/20/18_____                    _/s/ Robert G. Nelson_____
Date                             Robert G. Nelson
                                 President
                                 Beaverhead County Jackson Water
                                   and/or Sewer District
                                 P.O. Box 792
                                 Jackson, MT 59736